UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

**FILED**

FEB 1 3 2008


CLERK

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

|  |  |  |
|---|---|---|
| JAMES DEAN VAN WYHE, | * | CIV 07-4013 |
|  | * |  |
| Plaintiff, | * |  |
|  | * |  |
| vs. | * | MEMORANDUM OPINION |
|  | * | AND ORDER |
| TIM REISCH; DOUGLAS WEBER; | * |  |
| JENNIFER WAGNER; HEATHER VELD; | * |  |
| CBM INC.; TROY PONTO; and | * |  |
| KEITH DITMANSON, | * |  |
|  | * |  |
| Defendants. | * |  |
|  | * |  |

** * * * * * * * * * * * * * * * * * * * * * * * * * * ** * * * * * * * * * * * * * * * * * * * * *

Pending before the Court is Defendants' Motion for Summary Judgment, Doc. 33. Plaintiff submitted a response to the motion indicating that he is not able to respond to the motion without the assistance of counsel. Defendants then submitted a reply. Plaintiff filed a response to the Defendants' reply, again stating he cannot respond to the motion without the assistance of counsel and requesting that this action be set for trial. For the reasons set forth below, Defendants' Motion will be denied in part and granted in part.

## I. BACKGROUND

This action was brought by Plaintiff James Van Wyhe, an inmate at the South Dakota State Penitentiary ("SDSP"), seeking preliminary relief ordering the Defendants to provide him a kosher diet. Pursuant to a South Dakota Department of Corrections' ("SDDOC") disciplinary policy, Plaintiff was not allowed to consume a kosher diet for 30 days because he was found to have consumed non-kosher food. Defendants Douglas Weber and Jennifer Wagner were directed to provide a status report to the Court in response to the allegations made by Plaintiff. After receiving the Defendants' Status Response, Doc. 8, and supporting affidavits, Docs. 9 and 10, showing that Plaintiff did not lose weight during the time he contended he did not eat, the Court ruled there was

no basis for a temporary restraining order in this case and directed Plaintiff to file a response to Defendants' Status Response.  Plaintiff filed a response, Doc. 14.  He claims to have lost seven pounds between January 18, 2007 and January 24, 2007, during which time he states he ate no food. Beginning January 25, 2007, Plaintiff began eating again by secreting kosher foods that he traded with other inmates for the non-kosher food Plaintiff received on the SDSP's main food line.

On February 19, 2007, Defendant Wagner, the Cultural Activities Coordinator who is responsible for overseeing the provision of religious diets at the SDSP, filed a Second Affidavit, Doc. 15.  She states she received Plaintiff's request to resume the kosher diet after the 30-day suspension for a disciplinary violation and she has advised the SDSP's food service of this election. Plaintiff has not since informed the Court that he has been denied a kosher diet.  Wagner also informed the Court that the SDSP's disciplinary policy was changed effective February 14, 2007. An inmate who violates any of the rules, policies, or procedures governing religious diets is still subject to disciplinary action, but removal from the diet is no longer a sanction.

An Amended Complaint, Doc. 19, was filed by Plaintiff in which he asserts the following claims: (1) Defendant Reisch enacted a religious diet policy in August 2006, which Plaintiff claims violates his religious freedoms and due process protections; (2) Plaintiff was forced to sign a form acknowledging the religious diet policy without being allowed to modify the written form to protect his constitutional rights; and (3) Plaintiff was found guilty of a disciplinary violation without being allowed to call witnesses or view evidence relied upon for the guilty disciplinary finding, and he was removed from the kosher diet line for 30 days as punishment for that violation.  The relief sought by Plaintiff in his Amended Complaint is: (1) to declare SDDOC Religious Diet Policy 1.5.F.2 unconstitutional; (2) to declare that the current discipline policy denies prisoners due process; (3) to receive fair and equal treatment to other similarly situated prisoners; (4) to live free from the threat of punishment for his religious beliefs and practices; (5) nominal, compensatory and punitive damages; (6) equal treatment of prisoners eating kosher and non-kosher diets; and (7) protection of prisoners' religious/dietary rights statewide.

2

Plaintiff seeks declaratory and injunctive relief regarding SDDOC Policy 1.5.F.2, which was in effect when this action was filed. Before the policy was changed, SDDOC Policy 1.5.F.2 provided that:

> [A]n inmate who violates the rules governing religious diets may be removed from the religious diet program, lose commissary privileges, or both, as follows:
>
> 1.     The first violation will result in a written warning.
>
> 2.     The second violation will result in removal from the religious diet program for thirty (30) days and a loss of commissary food privileges for thirty (30) days.
>
> 3.     The third violation will result in removal from the religious diet program for sixty (60) days and a loss of commissary food privileges for sixty (60) days.
>
> 4.     The fourth or subsequent violation will result in removal from the religious diet program for ninety (90) days and a loss of commissary food privileges for ninety (90) days.

(Third Affidavit of Jennifer Wagner, Doc. 37, Ex. A.) These sanctions are the basis for Plaintiff's challenge to Policy 1.5.F.2. Effective February 14, 2007, Policy 1.5.F.2 was changed to eliminate removal from the religious diet program as a sanction for violating the rules governing religious diets. Plaintiff is, therefore, no longer subject to removal from a kosher diet for violating SDSP's rules governing religious diets and he does not allege the revised rule violates his rights.

Defendants seek summary judgment on all of Plaintiff's claims. Defendant Tim Reisch is the Secretary of the SDDOC. Defendant Douglas Weber is the Warden of the SDSP. As mentioned above, Defendant Jennifer Wagner is the Cultural Activities Director at the SDSP. CBM, Inc., is a company holding the contract with the SDDOC to supply meals to SDSP inmates. Defendants Troy Ponto and Keith Ditmanson are two SDSP officials that Weber assigned to investigate and propose a response to Plaintiff's administrative grievances Weber was required to answer. Defendants contend all of Plaintiff's claims for declaratory and injunctive relief regarding the disciplinary sanction of being removed from a kosher diet are moot because the policy was changed effective February 14, 2007 and Plaintiff is receiving a kosher diet. Defendants further claim Plaintiff's request for monetary damages is barred by qualified immunity because he does not allege violation of a constitutional right. Finally, Defendants assert Plaintiff has failed to allege and he

3

cannot prove that SDDOC policies or the Defendants' action violated federal statutory or constitutional law.

The Court previously denied two motions for appointment of counsel in this action and Plaintiff now contends he is unable to respond to Defendants' summary judgment motion without the assistance of counsel. "Indigent civil litigants do not have a constitutional or statutory right to appointed counsel." *Edgington v. Missouri Dep't of Corrections*, 52 F.3d 777, 780 (8th Cir. 1995). The factors relevant to evaluating a request for appointment of counsel include "whether both the plaintiff and the court will benefit from the appointment of counsel, taking into account the factual and legal complexity of the case, the presence or absence of conflicting testimony, and the plaintiff's ability to investigate the facts and present his claim." *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996). The Court earlier concluded that: (1) this case is not factually complex; (2) Plaintiff has demonstrated sufficient knowledge of the legal issues regarding his rights to a religious diet to enable him to pursue his claims without the appointment of counsel; (3) it appears there will be some conflicting testimony regarding whether Plaintiff lost weight due to the disciplinary sanction of being removed from the kosher diet, but Plaintiff has demonstrated an ability to procure documents and affidavits in support of his claims; and (4) Plaintiff has demonstrated he has the ability to investigate the facts and present evidence in support of his claims. Having considered all of the relevant factors, the Court denied Plaintiff's requests for appointment of counsel. Plaintiff has not submitted any additional information to alter the Court's earlier rulings regarding the appointment of counsel and the Court finds Plaintiff had the ability to respond to the summary judgment motion. That Plaintiff is proceeding *pro se* does not excuse him from complying with the Federal Rules of Civil Procedure. *See Ackra Direct Marketing Corp. v. Fingerhut Corp.*, 86 F.3d 852, 856-57 (8th 1996).

## II. DISCUSSION

In considering a motion for summary judgment, the Court asks the question whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). "Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and 'by affidavit or otherwise' designate 'specific facts showing that there is a genuine issue for trial.'" *Commercial*

4

*Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir. 1992) (quoting FED.R.CIV.P. 56(e)).  Simply creating a factual dispute cannot defeat a motion for summary judgment; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit.  *See, e.g., Ghane v. West* , 148 F.3d 979, 981 (8th Cir. 1998).  "A plaintiff's verified ... Complaint is the equivalent of an affidavit for purposes of summary judgment, and a complaint signed and dated as true under penalty of perjury satisfies the requirements of a verified complaint."  *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 994-95 (8th Cir. 2001) (citations omitted).  If the allegations in the verified complaint consist of nothing more than conclusory allegations, however, they are insufficient to overcome a summary judgment motion.  *See Roberson v. Bradshaw*, 198 F.3d 645, 647 (8th Cir. 1999).  Plaintiff's Amended Complaint in this action is a verified complaint and will be considered as evidence in ruling on Defendants' motion.  In addition, Plaintiff filed a sworn declaration on February 1, 2007, Doc. 1.  A second sworn declaration was filed by Plaintiff on February 15, 2007, Doc. 14.  Both of these sworn declarations are also evidence that can support Plaintiff's claims in this action.

Although Plaintiff requests relief on behalf of all prisoners, he does not possess standing to pursue the claims of other prisoners and he has not sought class certification in this lawsuit.  *See Meis v. Gunter*, 906 F.2d 364, 367-68 (8th Cir. 1990) (holding that inmates do not have standing to raise claims on behalf of other inmates).

**A.     Individual and official capacity claims under § 1983**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).    Plaintiff has alleged violations of his constitutional rights under the First Amendment, to due process and equal protection of the laws.  It is not disputed that all Defendants acted under color of state law.  *See id.* at 49-50 (stating "generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.").

All Defendants are sued in both their individual and official capacities. All claims for monetary damages against the Defendants in their official capacities are claims against the State of South Dakota. *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Damages claims against the State are barred by the Eleventh Amendment, unless South Dakota consented to suit or Congress abrogated its immunity. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (absent waiver by the State of South Dakota or valid override by Congress, "the Eleventh Amendment bars a damages action against a State in federal court"); South Dakota Constitution, Article III, Section 27; SDCL § 3-22-17, (the State of South Dakota has not waived its Eleventh Amendment immunity for damages actions in federal court). South Dakota has not consented to suit under 42 U.S.C. § 1983 and Congress has not abrogated South Dakota's Eleventh Amendment immunity under § 1983. Accordingly, all claims for monetary damages against the Defendants in their official capacity under 42 U.S.C. § 1983 are barred.

The only situation in which state officials acting in their official capacities will be considered "persons" for purposes of § 1983, and the Eleventh Amendment will not bar the § 1983 claim, is where the plaintiff is seeking prospective relief. *See Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997). Plaintiff seeks prospective relief in this action. Accordingly, the § 1983 official-capacity claims on which Plaintiff seeks prospective relief are not barred by the Eleventh Amendment.

Although the official-capacity § 1983 claims seeking monetary damages against the Defendants are barred by the Eleventh Amendment, "damages awards against individual defendants in federal courts 'are a permissible remedy in some circumstances notwithstanding the fact that they hold public office.' That is, the Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983." *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991) (quoting *Scheuer v. Rhodes* , 416 U.S. 232, 238 (1974)). State officials sued in their individual capacities may assert personal immunity defenses such as qualified immunity. *See Hafer*, 502 U.S. at 25. All Defendants are sued in their individual capacity for monetary damages, including compensatory, nominal and punitive damages. Therefore, the Court will consider the individual-capacity § 1983 claims against the Defendants, including their qualified immunity defenses.

6

**B.      Individual and Official Capacity Claims under RLUIPA**

The allegations in Plaintiff's Amended Complaint and his sworn statement, Doc. 14, involve conduct by prison officials that is addressed in the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc-2000cc-5. There is a significant division of authority among federal circuit and district courts regarding whether individual and official capacity claims for monetary damages are allowed under RLUIPA. The Court addressed these issues in a recently issued opinion in the case of *Sisney v. Reisch*, CIV 03-4260 (D.S.D.) (Memorandum Opinion and Order, Doc. 283). The Court's holdings in *Sisney, supra,* that are relevant to this lawsuit are as follows: (1) RLUIPA does not authorize individual capacity claims against prison officials; (2) prison officials are subject to liability under RLUIPA in their official capacities for both injunctive and monetary relief, because the State's Eleventh Amendment immunity was waived; and (3) the limitations on damages in the Prisoner Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(e)[1], apply to RLUIPA claims. *See Sisney*, CIV 03-4260 (Memorandum Opinion and Order, Doc. 283 at p. 51-52.) Accordingly, both injunctive and monetary damages are available under RLUIPA against Defendants in their official capacities.

**C.      Supervisory Liability**

The Court agrees with Defendants Reisch and Weber's position that they cannot be held liable under § 1983 on a theory of respondeat superior. *See Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993). "In the section 1983 context, supervisor liability is limited." *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995). "'For a supervisor to be held liable for the acts of a subordinate, something more must be shown that merely the existence of the supervisor-subordinate, relationship.'" *Ripson v. Alles*, 21 F.3d 805, 809 (8th Cir. 1994) (quoting *Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1987)). "'The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what he might see.'" *Id.*

---

[1]This section provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

The Court does not agree, however, with Weber's contention that he did not have sufficient personal involvement or knowledge regarding Plaintiff's claims because he assigned a subordinate official to investigate and prepare a response to Plaintiff's administrative appeals.  There is no dispute that Weber reviews and signs the responses to administrative appeals despite the involvement of his subordinate officials in investigating and preparing a proposed response. Defendants cite *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997), to support the contention that Weber cannot be held liable in this case because he did not have sufficient personal involvement.  *Gardner*, however, is fundamentally different than the present case.  In *Gardner*, the director of the state department of corrections "delegated the task of *responding to* [the inmate's] step two grievance to another Department official.  Thus, [the Director] had *no involvement* in this specific dispute." 109 F.3d at 430 (emphasis added).  Unlike the director in *Gardner* who delegated the entire task of responding to the inmate's grievance and had *no* involvement in the dispute, Weber does not delegate the entire task of responding to administrative appeals.  Rather, Weber is personally involved in the administrative review process by personally reviewing and signing responses to inmate grievances, including the responses to Plaintiff's administrative appeals in this case.  Accordingly, Weber is not entitled to summary judgment on the grounds that he lacked sufficient personal knowledge of or involvement in the disputes involved in this case.

The Amended Complaint clearly identifies Reisch as the SDDOC official who Plaintiff claims adopted Policy 1.5.F.2 in August 2006, which is the policy Plaintiff alleges violates his religious rights.  As to the other claims in the Amended Complaint, however, Plaintiff does not state any facts that create a triable issue of fact regarding Reisch's liability under 42 U.S.C. § 1983. Accordingly, Reisch is not entitled to summary judgment on Plaintiff's § 1983 individual capacity claim for monetary damages for adopting SDDOC Policy 1.5.F.2, but he is entitled to summary judgment on all other individual capacity § 1983 claims against him in this action.  Reisch is also subject to liability in his official capacity under RLUIPA for the adoption of Policy 1.5.F.2 in August 2006.

**D.     First Amendment and RLUIPA claims**

Plaintiff seeks injunctive, declaratory and monetary relief based upon the enforcement of Policy 1.5.F.2.  He claims the punishment of denying him a kosher diet for 30 days violated his

religious freedoms and he seeks to have the policy declared unconstitutional.  One aspect of this claim is clearly intended to state a violation of his right to exercise his religion under the First Amendment to the United States Constitution.  In addition, though Plaintiff does not mention this statute, another aspect of his claim is for violating RLUIPA.  The Court will evaluate Plaintiff's claims under both the First Amendment and RLUIPA.

Although prisoners do not lose all of their constitutional rights upon incarceration, "'[t]he fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration.'" *Hamilton v. Schriro*, 74 F.3d 1545, 1550 (8th Cir. 1996) (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977)).  "An inmate who challenges the constitutionality of a prison regulation or policy that limits the practice of religion must first establish that it infringes upon a sincerely held religious belief." *Id.*  To prevail on a RLUIPA claim, Plaintiff must likewise show that his religious beliefs are "sincerely held." *See Episcopal Student Found. v. City of Ann Arbor*, 341 F.Supp.2d 691, 700 (E.D.Mich. 2004).

Plaintiff complains of being denied a kosher diet in his verified Amended Complaint and the Court recognizes that persons practicing the Jewish faith eat a kosher diet.  Plaintiff did not state in his verified Amended Complaint that he practices the Jewish faith.  In a sworn declaration filed by Plaintiff on February 1, 2007, he stated: "My religious beliefs are sincerely held and require observance of a kosher diet in accordance with the Torah and teachings of the Rabbis & sages." (Doc. 1 at p.2.)  He also states he has observed a kosher diet since 1996.  (Doc. 1 at p.2.)  A kosher diet was approved for Plaintiff by SDSP officials on August 23, 2006 and he states he has "faithfully maintained a strict kosher diet in accordance with [his] religious beliefs." (Doc. 1 at p. 2.)  This is sufficient evidence to create a genuine issue of material fact regarding whether Plaintiff's religious beliefs are sincerely held.  Also, the disciplinary sanction of denial of a kosher diet clearly infringes upon Plaintiff's religious belief.

Injunctive relief is potentially available on both the First Amendment and RLUIPA claims. Defendants contend Plaintiff is not entitled to injunctive relief, however, because Policy 1.5.F.2 was changed.  The Eighth Circuit held that a prisoner lacked standing to pursue a claim for injunctive and

9

declaratory relief where the inmate was no longer subject to the conditions that caused the alleged constitutional violation. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (holding that inmate's request for declaratory relief was moot when he was transferred to a different facility and was no longer subject to the conditions he alleged violated his rights). The policy, for which Plaintiff seeks a declaration of unconstitutionality, was changed to eliminate removal from the kosher diet line as a sanction for violating the religious diet policies. Plaintiff has not claimed the altered policy violates his constitutional or statutory rights. Because Plaintiff is no longer subject to removal from a kosher diet, Defendants are entitled to summary judgment on Plaintiff's claims for injunctive and declaratory relief as to Policy 1.5.F.2 as it existed before February 14, 2007, under both the First Amendment and RLUIPA.

Granting summary judgment on the requests for injunctive and declaratory relief, leaves only Plaintiff's First Amendment claim for monetary damages in Defendants' individual capacities, subject to their qualified immunity defense, and a RLUIPA claim for monetary damages in Defendants' official capacities. The merits of each of these claims will be considered separately below.

### 1. First Amendment

Having made the threshold showings of sincerity and infringement, Plaintiff's First Amendment claim is evaluated under the four-factor test established by the Supreme Court in *Turner v. Safley*, 482 U.S. 78, 81 (1987). *See Murphy v. Missouri Dep't of Corrections*, 372 F.3d 979, 982-83 (8th Cir. 2004). Under *Turner*, "[a] prison regulation or action is valid ... even if it restricts a prisoner's constitutional rights if it is 'reasonably related to legitimate penological interests.'" *Id.* (quoting *Turner*, 482 U.S. at 89). The four factors to be evaluated are:

> First, we ask whether there is a "valid rational connection" between the prison regulation and the government interest justifying it. Second, we consider whether there is an alternative means available to the prison inmates to exercise the right. Third, we examine whether an accommodation would have a "significant 'ripple effect'" on the guards, other inmates, and prison resources. Fourth, we evaluate whether there is an alternative that fully accommodates the prisoner "at de minimis cost to valid penological interests."

*Murphy*, 372 F.3d at 982-83 (internal citations omitted).

Inmate compliance with rules of a prison is a valid governmental interest.  It is not clear on the record as it now exists, however, what the penological interest is for ensuring that an inmate always follows all aspects of his religious faith.  If a prisoner violates his religious beliefs, such as eating non-kosher food when one's religion requires eating a kosher diet, it is not rational to punish him for that violation of his religious beliefs by requiring him to continue violating his religious beliefs.  Accordingly, on the basis of the record at this point, the Court does not find a valid rational connection between Policy 1.5.F.2 and the governmental interest in requiring prisoners to comply with SDSP's rules.  The second factor likewise favors Plaintiff.  Under the policy as it was in effect before February 14, 2007, Plaintiff would have had very little alternative means to exercise his right to a kosher diet.  He either had to violate other prison rules by trading non-kosher food from the mainline for kosher food with other inmates, or he had to purchase kosher foods from the commissary.  The record does not show what kosher items are available for purchase in the commissary, but it is unlikely that full kosher meals are available for purchase.

The third *Turner* factor is whether an accommodation would have a significant ripple effect. Kosher food is served on a daily basis at the SDSP.  Thus, serving Plaintiff a kosher diet is not likely to cause any ripple effect on the guards or other inmates.  The record does not establish the price difference between supplying kosher versus non-kosher meals.  Accordingly, the Court is unable to determine whether there would be any ripple effect on prison resources or whether supplying a kosher diet to Plaintiff would be a de minimis cost.

Having evaluated all of the *Turner* factors, the Court finds there is insufficient evidence in the record to establish on summary judgment that Policy 1.5.F.2 was reasonably related to a legitimate penological interest.  Accordingly, Defendants are not entitled to summary judgment in their individual capacities on the merits of Plaintiff's First Amendment claim regarding enforcement of Policy 1.5.F.2 as it existed before February 14, 2007.  Because Defendants are not entitled to summary judgment on the merits of the First Amendment claim, Defendant's qualified immunity defense must be examined.

11

The qualified immunity doctrine was explained by the Eighth Circuit in *Tlamka v. Serrell*, 244 F.3d 628, 632 (8th Cir. 2001):

> Qualified immunity protects a governmental official from suit when his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "What this means in practice is that whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken."

*Id.* (citations omitted). The Court must conduct a two-part inquiry in deciding whether a prison official is entitled to qualified immunity: "whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, ... whether that right was clearly established at the time of the alleged violation." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). When evaluating a qualified immunity defense at the summary judgment stage, the Court must take as true those facts asserted by plaintiff that are properly supported in the record. *See Tlamka*, 244 F.3d at 632. If, however, there is a genuine dispute about the predicate facts material to the qualified immunity issue, the prison officials are not entitled to summary judgment. *See Pace v. City of Des Moines*, 201 F.3d 1050, 1056 (8th Cir. 2000). There is no dispute regarding the predicate facts in this case.

The Supreme Court explained that, "[f]or a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (internal citation omitted)).

Defendants contend it is not clearly established that Plaintiff's First Amendment rights were violated by a temporary suspension of Plaintiff's access to a kosher diet for a violation of the religious diet rules. They cite three cases for their position that "[s]everal courts have upheld the removal of an inmate from a religious diet for purchasing or consuming food that is inconsistent with the religious diet being provided." (Doc. 35 at p. 12.) The first case cited is *Merriweather v. Sherwood*, 235 F.Supp.2d 339 (S.D.N.Y. 2002). This case does not support Defendants' position.

12

The inmate in *Merriweather* was not removed from a religious diet for purchasing or consuming non-kosher food. *Id.* at 345-46. Rather, the Court mentioned the inmate's consumption of non-kosher food in rejecting, for lack of credibility, his testimony that there was a widespread failure to accommodate prisoners' requests for diets that conform to their religious beliefs. *Id.* at 346. This case actually supports Plaintiff's claim that it violates his religious rights to deny him a kosher diet. The *Merriweather* court notes that the defendant prison provided kosher meals as a religious accommodation to any Muslim who requested it, even though the prison's Muslim religious adviser averred it was not necessary for a Muslim to eat a kosher diet. *See id.* at 346. Accordingly, the prison in *Merriweather* was being significantly more accommodating than the SDSP here and certainly was not punishing the inmates by removing them from a religious diet for purchasing or consuming food inconsistent with their religious beliefs.

The second case cited by Defendants is *Russell v. Wilkinson*, 2003 WL 22434752 at *2 (6th Cir. Oct. 24, 2003). The plaintiff inmate was authorized to have kosher meals until he was found guilty of stealing non-kosher food items and he had also purchased non-kosher food from the inmate commissary. The punishment imposed was that the inmate's entitlement to kosher meals was indefinitely terminated. *See id.* at *1. The Court concluded the inmate's conduct "demonstrates that he did not follow the tenets of his religious beliefs. As the denial of kosher meals was based on [the inmate's] obvious actions in not observing the kosher food requirements outside meals, [the prison's managing officer] had a legitimate penological interest in discontinuing Russell's request. That legitimate penological interest concerns the maintenance of prison discipline in the facility." *Id.* at *2. The Sixth Circuit cited the *Turner* factors in considering the inmate's First Amendment free exercise claim, but did not separately analyze them in the written opinion. The Court is not bound by the *Russell* decision and does not find it persuasive given the Court's analysis of the *Turner* factors in this case.

The third case cited by Defendants is *Kuperman v. Commissioner, New Hampshire Dep't of Corrections*, 2005 WL 1657083 (D.N.H. June 16, 2005). The *Kuperman* court issued an advisory opinion that the plaintiff inmate would not be likely to succeed on the merits of his claim that the prison was wrongfully denying him access to meals that complied with his religion. *See id.* at *1. The inmate had not exhausted his administrative remedies and thus he could not proceed on his

claim. The court stated if the inmate had exhausted his administrative remedies, the evidence showed he violated the prison's rules regarding religious diets by consuming food inconsistent with his religious diet. The punishment for eating food inconsistent with his religious diet was automatic suspension for six months from the religious diet. The court recognized this penalty was harsh, but deferred to the "prison's penological interests in maintaining order," and stated that the court could not say the "prison's policy is unnecessary." *Id.* This is not the test for a First Amendment claim, however, and the Court rejects the holding in *Kuperman*.

In addition to the above three cases, Defendants cite the Eighth Circuit's decision in *Brown-El v. Harris*, 26 F.3d 68, 69 (8th Cir. 1994), for their position that removal from the kosher diet did not violate Plaintiff's First Amendment free exercise rights. In *Brown-El*, the inmate practiced the Muslim faith and during the Muslim holy month of Ramadan, Muslims are not to eat during daylight hours. *See id.* at 69. Brown-El, however, broke the fast when he ate a meal during daylight hours. *See id.* Pursuant to prison policy, he was not allowed to participate in the fast for the remainder of Ramadan and he claimed this violated his First Amendment free exercise rights. *See id.* The Eighth Circuit held that the prison's policy did not restrict Brown-El's freedom because it "did not coerce worshippers 'into violating their religious beliefs; nor [did it compel] them, by threat of sanctions, to refrain from religiously motivated conduct.'" *Id.* at 69-70 (quoting *United States v. Means*, 858 F.2d 404, 407 (8th Cir. 1988)).

The Court does not find the *Brown-El* case compels the Court to grant summary judgment to Defendants on the merits of Plaintiff's First Amendment claim, but the Court does find this case relevant to Defendants' qualified immunity defense. Based upon *Brown-El*, the Court finds a reasonable prison official may not have known enforcement of Policy 1.5.F.2 would violate Plaintiff's First Amendment rights. Though the Court does not agree with the holdings or rationale adopted by the courts in *Russell*, 2003 WL 22434752 at *2, and *Kuperman*, 2005 WL 1657083 at *1, these decisions do support Defendants' claim that when Policy 1.5.F.2 was enforced against Plaintiff it was not clearly established that denying a prisoner kosher meals for eating non-kosher foods would violate his constitutional rights. *See Tlamka*, 244 F.3d at 632 (setting for the qualified immunity standard). Accordingly, the Court finds Defendants are entitled to qualified immunity on

14

Plaintiff's claim that Policy 1.5.F.2, as it existed before February 14, 2007, violated his constitutional right to exercise his religion.

### 2. RLUIPA

"By enacting RLUIPA, Congress established a statutory free exercise claim encompassing a higher standard of review than that which applies to constitutional free exercise claims." *Murphy*, 372 F.3d at 986. The applicable statute provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). A threshold matter Plaintiff is required to establish, is that there is a substantial burden on his ability to exercise his religion. *See* 42 U.S.C. § 2000cc-2(b)[2]. In 2004, the Eighth Circuit held that to meet this threshold showing, the government policy or actions:

> must "significantly inhibit or constrain conduct or expression that manifests some central tenet of a [person's] individual [religious] beliefs; must meaningfully curtail a [person's] ability to express adherence to his or her faith; or must deny a [person] reasonable opportunities to engage in those activities that are fundamental to a [person's] religion."

*Murphy*, 372 F.3d at 988 (quoting *Wier v. Nix*, 114 F.3d 817, 820 (8th Cir. 1997)). Thus, the Eighth Circuit directed that courts determine whether the conduct or expression constrained by prison officials was a "central tenet" of or "fundamental" to the prisoner's religion. In *Cutter v. Wilkinson*, however, the Supreme Court explained that, "RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion." 544 U.S. 709, 725 & n. 13 (2005) (citing 42 U.S.C. § 2000cc-5(7)(A)). In determining that courts are not to look to the centrality of the belief or

---

[2] 42 U.S.C. § 2000cc-2(b), provides as follows:
If a plaintiff produces prima facie evidence to support a claim alleging a violation of the Free Exercise Clause or a violation of section 2000cc of this title, the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the law (including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion.

practice, the Supreme Court cited the provision in RLUIPA that defines "religious exercise" to "include any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Accordingly, in determining whether Policy 1.5.F.2 imposed a substantial burden on Plaintiff's exercise of his religion, the Court will follow the Supreme Court's direction in *Cutter, supra*, and will not question whether a kosher diet is central to the exercise of his religion.

Before Policy 1.5.F.2 was changed, there is no question that it significantly inhibited and meaningfully curtailed Plaintiff's ability to express adherence to his faith. After Plaintiff was caught eating non-kosher food, he was no longer allowed, for a period of 30 days, to express adherence to his faith by eating only kosher foods. Even if Plaintiff were able to secret some kosher foods to consume during this 30 day period, his ban from the kosher diet line significantly inhibited his ability to eat only kosher foods. The Court finds Plaintiff has easily satisfied his threshold showing that Policy 1.5.F.2, as it existed before February 14, 2007, substantially burdened his ability to exercise his religion.

The burden then shifts to Defendants to prove that enforcement of Policy 1.5.F.2, as it existed before amendment, was is in furtherance of a compelling governmental interest and it was the least restrictive means of furthering that compelling governmental interest. Maintaining discipline of prisoners in the SDSP is a compelling governmental interest. Requiring inmates to continue to violate their religious beliefs for a period of 30 to 90 days, however, is clearly not the least restrictive means of furthering that compelling governmental interest. As an example, the SDDOC adopted a less restrictive means by changing the policy to eliminate removal from a kosher diet as a penalty. Thus, Policy 1.5.F.2 was not the least restrictive means of furthering a compelling governmental interest.

The next issue is whether any of the Defendants are entitled to summary judgment on the merits of the RLUIPA cause of action due to a lack of personal involvement. Based on the existing record, Reisch was the official responsible for adopting Policy 1.5.F.2. Weber is responsible for enforcing Policy 1.5.F.2 at the SDSP and denied Plaintiff's administrative grievance challenging this policy. Wagner is involved in initially granting or denying SDSP inmates' requests for religious

16

accommodations and enforced Plaintiff's ban from the kosher diet line in compliance with Policy 1.5.F.2. CBM, Inc.'s liability is discussed separately below. Veld presided over Plaintiff's disciplinary hearing and initially imposed the penalty of removal from the kosher diet line for 30 days. Ponto and Ditmanson investigated Plaintiff's administrative appeals of the punishment imposed by Veld and recommended denial of Plaintiff's appeal to Weber because they found sufficient evidence to support Plaintiff's violation of Policy 1.5.F.2. The Court finds Reisch, Weber and Wagner were personally involved in the adoption and enforcement of Policy 1.5.F.2 and they each had the ability to influence the decision whether Policy 1.5.F.2 should remain in effect. Thus, summary judgment will not be granted in favor of these three Defendants. On this record, however, there is no evidence that Defendants Veld, Ponto or Ditmanson were involved in the adoption of Policy 1.5.F.2 or that they had any authority or influence with their superiors to change this policy. Rather, they were obeying policies adopted by their superiors as required by their positions as subordinates of Reisch and Weber. Thus, the Court finds Defendants Veld, Ponto and Ditmanson are entitled to summary judgment under RLUIPA on the merits of Plaintiff's claims in this action.

Having denied summary judgment to some Defendants under RLUIPA as to enforcement of Policy 1.5.F.2, as it existed before February 14, 2007, and having found that monetary damages are available against Defendants in their official capacity, the Court must determine whether the PLRA limits Plaintiff's potential damages in this action. RLUIPA addresses the application of the PLRA: "Nothing in this chapter shall be construed to amend or repeal the Prison Litigation Reform Act of 1995 (including provisions of law amended by that Act)." 42 U.S.C. § 2000cc-2(e). By this provision, Congress clearly anticipated the PLRA would apply to RLUIPA claims. In the present case, Plaintiff has alleged he suffered weight loss but has not alleged any other injury. Loss of weight is not a "physical injury" for purposes of the PLRA. *See Pearson v. Welborn*, 471 F.3d 732, 744 (7th Cir. 2006) (holding that loss of 50 pounds is not a "physical injury" under the PLRA); *Davis v. District of Columbia*, 158 F.3d 1342, 1349 (D.C.Cir. 1998) (holding that weight loss, appetite loss and insomnia do not constitute "physical injury" under the PLRA). Accordingly, Plaintiff is limited to a potential recovery of nominal damages on his official capacity claims under RLUIPA. *See Royal v. Kautzky*, 375 F.3d 720, 724 (8th Cir. 2004) (holding that an inmate may recover an award of nominal damages under the PLRA despite the lack of a physical injury).

Plaintiff also requests punitive damages in this case. Even if punitive damages were available on an official capacity RLUIPA claim, which the Court is not deciding in this action, the Court finds no evidentiary basis for an award of punitive damages in this case as there is no evidence in this record that Defendants' actions were "'motivated by evil motive or intent, or ... involve[d] reckless or callous indifference to the federally protected rights'" of Plaintiff. *Royal*, 375 F.3d at 724 (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).

In addition to relief based upon the enforcement of Policy 1.5.F.2, Plaintiff contends his rights were violated by being required to sign a form acknowledging he was aware of the policy. The Court finds no evidence to support a claim that being required to sign such a form violates either Plaintiff's First Amendment rights or RLUIPA. This requirement does not interfere with Plaintiff's exercise of his religious beliefs and it does not impose a substantial burden on the exercise of those beliefs.

### E.     CBM's Liability

CBM has a contract with the SDDOC to provide meals to SDSP inmates. In his Amended Complaint, Plaintiff states the following as his claim against CBM: "I have asked the C.B.M. Food Service staff on several occasions for a kosher meal which conformed to my religious beliefs. Each request for a kosher meal was denied." (Amended Complaint, Doc. 19.) He also stated that he had been informed by "DOC Personnel" that the DOC does not control what food CBM provides to SDSP prisoners. CBM is entitled to summary judgment on Plaintiff's claims against it for the same reasons the other Defendants are entitled to summary judgment on the First Amendment claim. As to RLUIPA, the record demonstrates that CBM was not responsible for deciding which inmates were entitled to kosher meals and did not adopt Policy 1.5.F.2. There is no evidence that CBM had the ability to influence SDDOC or SDSP officials to change Policy 1.5.F.2. Even if CBM could be held liability in an official capacity, it is entitled to summary judgment because it did not have authority to grant or deny Plaintiff's request for kosher meals and was not responsible for adoption of the policy.

### F.     Due Process Claim

Defendant Veld conducted Plaintiff's disciplinary hearing that resulted in Plaintiff being removed from a kosher diet for 30 days. Plaintiff alleges his due process rights were violated in the

18

disciplinary process because Defendants did not allow him to call witnesses or view evidence relied upon for the finding of guilt by Defendant Veld.   In his Amended Complaint, Plaintiff also challenges the sufficiency of evidence to sustain the guilty disciplinary finding and sanctions imposed.

To establish a violation of his procedural due process rights, Plaintiff must show that: (1) a liberty or property interest has been interfered with by the Defendants; and (2) the procedures that resulted in that deprivation were not constitutionally sufficient.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).  The Supreme Court established the test for determining whether a prisoner has a liberty interest:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause.  But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).

Defendants cite the Eighth Circuit case, *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003), for their position that, "[l]imitations on religious exercise for brief periods of time do not constitute an atypical and significant hardship triggering due process protection." (Doc. 35 at p. 18.)  The Court does not find that *Phillips* controls in the present case.  In that case, the prisoner was not allowed to attend religious services for 37 days.  *See id.* at 847.  The Eighth Circuit also found, however, that the prisoner "was not prevented from exercising his religion within his cell, thus he was not subjected to an atypical and significant hardship."  *Id.*  The Court finds a significant distinction between not being allowed to attend religious services, where a prisoner can continue to worship in one's cell, and being completely denied a kosher diet.  If a prisoner practicing a religion that requires a kosher diet is denied such a diet, he will violate his religious beliefs each time he consumes non-kosher food.  The prisoner in *Phillips* still had the opportunity to freely worship in his cell to exercise his religious beliefs, while an inmate deprived of a kosher diet cannot eat non-kosher food and still comply with his religious beliefs.  Given the above distinction, the Court does not find that *Phillips, supra*, is controlling in this case.  The Court need not resolve the issue of

19

whether being denied a kosher diet for 30 days is an atypical and significant hardship, however, because the Court finds the Defendants are entitled to summary judgment on other grounds.

As to the procedures afforded Plaintiff, he contends he was not allowed to call witnesses or view evidence relied upon by Defendant Veld in finding him guilty of violating Policy 1.5.F.2. The Eighth Circuit explained that:

> In a prison disciplinary proceeding, the prisoner must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, consistent with correctional goals and safety, to call witnesses and present a defense; and (3) a written statement of the evidence relied upon by the fact finder and the reasons for the disciplinary action.

*Dible v. Scholl*, 506 F.3d 1106, 1110 (8th Cir. 2007) (citing *Superintendent v. Hill*, 472 U.S. 445, 454 (1985); *Wolff v. McConnell*, 418 U.S. 539, 563-67 (1974)). The Court does not find that arbitrary denial of the right to call witnesses in a disciplinary proceeding comports with a prisoner's rights to due process. *See Turner v. Caspari*, 38 F.3d 388, 390-91 (8th Cir. 1994) (recognizing that prison officials may refuse to allow an inmate to call live witnesses at prison disciplinary hearings for certain reasons, including safety, but holding that "prison officials may not arbitrarily deny an inmate's request to call witnesses."). Defendants have not explained on this record why it would have been inconsistent with correctional goals and safety to allow Plaintiff to call witnesses or view the evidence at issue. Despite this lack of evidence, the Court nevertheless finds Defendants are entitled to summary judgment in this case because Plaintiff has not submitted any evidence to show what his witnesses would have said if he were allowed to call them or what the evidence would have been that he claims he wanted to present during the disciplinary hearing. There is no evidence in the record to show whether the witnesses would have been exculpatory or would have even contradicted the written reports submitted by the correctional officers. On the other hand, there is "some evidence" in the record to support the disciplinary violations and the sanctions imposed. *See Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985). For each of the violations, a correctional officer submitted a written report detailing their observations of Plaintiff's actions, which they found to violate the SDSP's religious diet policy. Defendant Veld reviewed those reports, gave Plaintiff an opportunity to address the allegations, and concluded that Plaintiff violated the religious diet policy. Plaintiff cannot defeat Defendants' summary judgment motion based upon the conclusory

allegations in his Amended Complaint and his sworn statements do not explain what evidence his witnesses would have provided at the disciplinary hearing at issue. *See Roberson*, 198 F.3d at 647. Based upon the above discussion, the Court finds Defendants are entitled to summary judgment on Plaintiff's due process claim.

## G.    Equal Protection

Plaintiff seeks relief for alleged unequal treatment between inmates eating a kosher diet and inmates eating a non-kosher diet. To prevail on an equal protection claim, Plaintiff must establish that: "'(1) persons who are similarly situated are treated differently by the government, and (2) that the government has failed to provide a rational basis for the dissimilar treatment.'" *Hosna v. Groose*, 80 F.3d 298, 304 (8th Cir. 1996) (quoting *Moreland v. United States*, 968 F.2d 655, 660 (8th Cir. 1992)). The Eighth Circuit further recognized that, "unequal treatment of persons who are 'entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination.'" *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007) (quoting *Batra v. Bd. of Regents of Univ. of Neb.*, 79 F.3d 717, 721 (8th Cir. 1996) (citations omitted)).

Plaintiff does not set forth the conduct he alleges resulted in unequal treatment and does not allege any particular Defendant took any specific action that would violate his right to equal protection of the laws. There is no triable issue of fact regarding whether Plaintiff was similarly situated to inmates he asserts were treated differently by the government. Moreover, Plaintiff's failure to explain how any of the named Defendants' actions violated his equal protection rights results in there being no evidence to establish that any of Defendants' conduct included an element of intentional or purposeful discrimination against Plaintiff. Based upon the above discussion, summary judgment is properly entered in favor of Defendants on Plaintiff's equal protection claims. Accordingly,

## III. CONCLUSION

For the reasons set forth above, Defendants are entitled to summary judgment on all claims in this action except for Plaintiff's claims against Defendants Reisch, Weber and Wagner for unlawful denial of a kosher diet pursuant to enforcement of Policy 1.5.F.2, as it existed before

February 14, 2007. This claim is actionable under RLUIPA against these three Defendants in their official capacities. Plaintiff is limited, however, to the potential recovery of nominal damages under RLUIPA and the PLRA. "[O]ne dollar is recognized as an appropriate value for nominal damages." *Corpus v. Bennett*, 430 F.3d 912, 916 (8th Cir. 2005). The Seventh Amendment to the United States Constitution provides: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." U.S. CONST. amend. VII. Given that the value in controversy in this action does not exceed twenty dollars, the parties are not entitled to a jury trial. *See Burt v. Abel*, 585 F.2d 613, 616 & n.7 (4th Cir. 1978) (holding that "[i]n an action for damages under § 1983, the seventh amendment requires a jury trial upon demand where the amount in controversy exceeds twenty dollars.") Accordingly, the remaining claim against Defendants Reisch, Weber and Wagner will be submitted to the Court for adjudication.

IT IS ORDERED:

(1)     That Defendants' Motion for Summary Judgment, Doc. 33, is granted as to all of Plaintiff's claims in this action except as to Plaintiff's claim against Defendants Tim Reisch, Douglas Weber and Jennifer Wagner for unlawful denial of a kosher diet pursuant to enforcement of SDDOC Policy 1.5.F.2, as it existed before February 14, 2007, which is actionable under RLUIPA against these three Defendants in their official capacities.

(2)     That Plaintiff is limited to the potential recovery of nominal damages if he prevails on the remaining claim. A trial to the Court on this remaining claim will be scheduled in a subsequent Order.

Dated this **13** day of February, 2008.

BY THE COURT:

*Lawrence L. Piersol*
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
By: *Jackie Weisenheimer*, Deputy
     (SEAL)

22